# Exhibit B

FILED
8/30/2017 8:53 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Krystal Gonzalez

CAUSE NO. **2017CI16449**

| | | |
|---|---|---|
| JQJ, LLC | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 150 ___ JUDICIAL DISTRICT |
| | § | |
| PELEUS INSURANCE COMPANY, | § | |
| THOMAS ANDREW KORALEWSKI | § | |
| AND HEIDI JENNIFER MEADE | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION WITH DISCOVERY ATTACHED

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES JQJ, LLC (hereinafter referred to as "Plaintiff"), complaining of Defendants, PELEUS INSURANCE COMPANY (hereinafter referred to as "PELEUS"), THOMAS ANDREW KORALEWSKI (hereinafter referred to as "KORALEWSKI") and HEIDI JENNIFER MEADE (hereinafter referred to as "MEADE"), and for cause of action would respectfully show unto the Court and Jury as follows:

### I. DISCOVERY CONTROL PLAN

Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff asks the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### II. PARTIES AND SERVICE

Plaintiff, JQJ, LLC, is the named insured on a commercial building policy with PELEUS INSURANCE COMPANY and operates the Northwood apartments in Bexar County, Texas.

Defendant, PELEUS INSURANCE COMPANY, is an insurance company engaging in the business of insurance and operating in the State of Texas procuring and adjusting policies in Texas. PELEUS INSURANCE COMPANY can be served as follows:

Peleus Insurance Company
Mark E. Watkins, President, or any Officer
8720 Stony Point Pkwy, Ste. 400
Richmond, Virginia 23235-1989
c/o Attorney for Service
Commissioner for the Texas Department of Insurance
Texas Department of Insurance
333 Guadalupe St.
Austin, Texas 78701.

Defendant, THOMAS ANDREW KORALEWSKI, is an individual and resident domiciled in the State of Texas engaging in the business of insurance adjusting policies and claims in Texas. THOMAS ANDREW KORALEWSKI can be served at the following address:

Thomas Andrew Koralewski
14100 Southwest Fwy, Ste. 420
Sugar Land, Texas 77478-3466.

Defendant, HEIDI JENNIFER MEADE, is an individual and resident domiciled in the State of Texas engaging in the business of insurance adjusting policies and claims in Texas. HEIDI JENNIFER MEADE can be served at the following address:

Heidi Jennifer Meade
8144 Walnut Hill Ln., Ste. 1490
Dallas, Texas 75231-4449.

### III. JURISDICTION AND VENUE

This Court has Jurisdiction over this case in that the amount in controversy exceeds the minimum jurisdictional limits of this Court.

The Court has jurisdiction over PELEUS because this defendant is an insurance company that engages in the business of insurance in the State of Texas, and Plaintiff's causes of action arise out of this defendant's business activities in the State of Texas.

The Court has jurisdiction over KORALEWSKI because this defendant engages in the business of insurance adjusting policies and claims in the State of Texas, and Plaintiff's causes of action arise out of this defendant's business activities in the State of Texas.

The Court has jurisdiction over MEADE because this defendant engages in the business of insurance adjusting policies and claims in the State of Texas, and Plaintiff's causes of action arise out of this defendant's business activities in the State of Texas.

Venue is mandatory and proper in Bexar County, Texas, because all or a substantial part of the events giving rise to the lawsuit occurred in this county (*see* Tex. Civ. Prac. & Rem. Code § 15.002) and the insured property that is the basis of this lawsuit is located in Bexar County, Texas.

## IV. CONDITIONS PRECEDENT

All conditions precedent to recovery have been performed, waived, or have occurred.

## V. FACTS

A.    Plaintiff is the owner of insurance Policy No. 8993 issued by PELEUS (hereinafter referred to as the "Policy").

B.    Plaintiff owns the insured property which is multi-building apartment complex specifically located at 8315-8326 N. Vandiver Rd., Bexar County, San Antonio, Texas 78209 (hereinafter referred to as the "Property").

C.    PELEUS or its agent sold the Policy, insuring the Property, to Plaintiff.

D.    On or about April 12, 2016, a severe wind and hail storm struck San Antonio, Texas causing severe damage to homes and businesses throughout the area, including Plaintiff's Property.

E.    Plaintiff submitted a claim to PELEUS against the Policy for roofs, windows, interior

damage, carports, HVAC systems and other resulting water damage the Property sustained as a result of the violent wind and hail storm.  Plaintiff asked that PELEUS cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy.

F.     PELEUS assigned Claim Number 10808 to Plaintiff's claim, which included damage that had occurred at multiple buildings and separate structures at the Property.

G.     PELEUS assigned KORALEWSKI and MEADE to individually investigate and adjust the claim.  As the adjusters assigned, KORALEWSKI and MEADE were improperly trained and failed to perform a thorough investigation of Plaintiff's claim.

H.     KORALEWSKI and MEADE were charged with investigating the claim and communicating with Plaintiff about the Policy terms.   KORALEWSKI inspected Plaintiff's Property on or about April 25, 2016.  During the inspection, KORALEWSKI was tasked with the responsibility of conducting a thorough and reasonable inspection of Plaintiff's claim, including determining the cause of and then qualifying the damage done to Plaintiff's Property. It was during the initial investigation that the insured was offered $150,000.00 so they could commence initial, temporary repairs which were extensive. There was brush and downed trees throughout the complex and extensive leaks throughout all the roofs which required numerous temporary repairs.  On or about May 23, 2016, PLAINTIFF forwarded a proposal through her contractor JMI for $940,531.22 so that the carrier could speed up its investigation.

I.     On behalf of PELEUS and at their request, KORALEWSKI prepared an estimate for costs to repair the Property on or about June 20, 2016, which vastly under-scoped the actual covered damages to the Property in comparison to the JMI estimate, thus

demonstrating KORALEWSKI did not conduct a thorough investigation of the claim. Moreover, KORALEWSKI conducted a substandard inspection of Plaintiffs' Property by omitting covered damages sustained to the interiors, carports, roofs, HVAC systems, trim, siding, and other structures. Much of the damaged areas of the Property were underpaid and expected to be repaired with lesser value materials and labor. Ultimately, KORALEWSKI's estimate did not allow adequate funds to cover the cost of the repairs to all damages sustained by Plaintiffs. While the initial scope of repairs for damages was entered on June, 20, 2016, there were no undisputed payments made until many months later. Those payments were also grossly below what was fair and reasonable to repair the damages to the property.

J.     As the adjuster assigned by third-party claims administrator Strata Claims Management, MEADE was charged with investigating the claim and communicating with Plaintiff about the Policy terms during Plaintiff's multiple attempts to have the value of her damaged reconsidered and rescoped by the insurance carrier. On August 2, 2016, two full months after the initial estimate was inputted, MEADE emailed the owner of the apartment complex, Jung Hsi, to state that KORALEWSKI had finally prepared an estimate of repairs for this property on behalf of Peleus. MEADE attached a Proof of Loss noting that the estimate was $546,029.31 with depreciation of $293,095.54 leaving a net future payment of $77,933.77 after the prior $150,000.00 was reduced and the $25,000.00 deductible. The depreciation was grossly overstated and KORALEWSKI and MEADE should not have withheld that much depreciation. On August 25, 2016, the owner, Jung Hsi, emailed MEADE to state that she strongly disagreed with the scope of repair and pleaded that the decision be re-evaluated. MEADE made no effort to explain

5

the process to Ms. Hsi including depreciation. Plaintiff further explained that the scope of repairs was not even remotely close to the cost of repair submitted by her own contractor, JMI. Ms. Hsi further complained in her email that 70% depreciation was deducted and was patently unfair to her company as depreciation should have been 30-35%. Ms. Hsi requested that MEADE re-evaluate the scope of repairs for air conditioning units, carports and electrical work.

K.  On October 1, 2016, after MEADE failed to make any revisions to the estimate or reconsider the JMI estimate, Ms. Hsi succumbed and sent the signed Proof of Loss further complaining that the scope of repair was patently unfair. Ms. Hsi further complained that there were 20 apartment units that they could not rent because payments still had not been made for the roofs.

L.  On October 11, 2016, Strata changed adjusters and assigned Karen O'Grady Davis who responded by email to Ms. Hsi agreeing that the depreciation was too high and that yet another estimate would have to be prepared and another proof of loss sent further delaying payment to the Plaintiff. There was no reference to paying statutory penalties for the repeated delays in paying on this claim. Davis forwarded the second Proof of Loss on October 12, 2016. Plaintiff signed the second Proof of Loss on November 1, 2016 with the adjusted depreciation factored in and a future net payment of $177,248.91. On November 9, 2016, Davis acknowledged receipt of the signed Proof of Loss and stated it would be submitted for payment. Plaintiff also submitted a spreadsheet of out of pocket expenses for temporary repairs on November 9, 2016 in an email to Davis. Davis noted in her November 9, 2016 email that this spreadsheet would be forwarded to KORALEWSKI to review and make payments accordingly. KORALEWSKI never

6

acknowledged the additional damages and to date no additional payments have been made for these receipts and extra repairs.

M.    Strata then re-assigned the case back to MEADE in the latter part of 2016. There was no mention of additional payments for out of pocket expenses to make temporary repairs at the property as was promised by Davis. Plaintiff continued to complain about the lack of a reasonable payment and was forced to hire an attorney to assist with the claim. Counsel sent a Letter of Representation on January 16, 2017 stating that experts have been retained to evaluate the damages at the complex. Plaintiff's cost estimate prepared by Carl Johnson was sent to MEADE on January 17, 2017.

N.    MEADE hired yet another company, JS Held, to assist her in adjusting the claim as the initial adjustment was grossly under-scoped. Adjusters Bryan Heikkinen and David McGlaughlin handled the bulk of the adjusting services on behalf of JS Held and held themselves out to PLAINTIFF as representing the Defendants in assisting with the handling of the claim. Additional inspections were conducted by Heikkinen, McGlaughlin and Plaintiff's experts on February 21, 2017 and February 22, 2017. JS Held requested more inspections on March 3, 2017 and March 20, 2017 for engineers to address some coverage issues. Plaintiff accommodated every one of these inspections. JS Held engineer Chad Zielinski prepared his final "coverage" determination on May 24, 2017 outlining areas he felt were not covered and some that were covered. To this date, not a single penny of an undisputed payment has been made based on the JS Held findings.

O.    On or about July 21, 2017, David McGlaughlin forwarded the final scope of repair estimate and the JS Held engineering report. It is apparent that the engineering report was

finalized on May 24, 2017 yet an estimate was not prepared until two months later. MEADE was also carbon copied on this email but we do not know if she had the information earlier. In that estimate, JS Held determined that the initial two adjustments by MEADE and KORALEWSKI were grossly under-scoped. JS Held noted that the RCV value was $830,357.67 which is almost $300,000.00 more than the initial adjustments. Even though Defendants have been in possession of this additional scope of repair, there has been NO additional undisputed payments as of the filing of this lawsuit. Further, no payments have been made for out of pocket expenses requested in November 2016.

P.    KORALEWSKI and MEADE failed to fairly evaluate and adjust Plaintiff's claim as they are obligated to do under the Policy and Texas law.  By failing to properly investigate the claim, preparing a vastly underscoped estimate which resulted in a wholly inaccurate claim, KORALEWSKI and MEADE engaged in unfair settlement practices by misrepresenting material facts to Plaintiff – that the covered damage to the Property was much less than it actually is.   Specifically, KORALEWSKI and MEADE both underestimated and undervalued the cost of materials required for the necessary repairs, incorrectly applied material sales tax, and failed to include contractor's overhead and profit.  KORALEWSKI's and MEADE's inadequate investigation was relied upon by PELEUS in this action and resulted in Plaintiff's claim being undervalued and underpaid.

Q.    KORALEWSKI and MEADE failed to properly adjust the claim and PELEUS has denied at least a portion of the claim without an adequate investigation, even though the Policy provided coverage for losses such as those suffered by Plaintiff.   As a result of KORALEWSKI's and MEADE's unreasonable investigation of the claim, including not providing full coverage for damages sustained by Plaintiff, as well as under-scoping the

damages during his investigation and thus denying adequate and sufficient payment to Plaintiff to repair their Property, Plaintiff's claim was improperly adjusted.

R.   PELEUS, KORALEWSKI and MEADE wrongfully underpaid Plaintiff's claim for repairs to the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff.   Furthermore, PELEUS failed to pay Plaintiff's claim by not providing coverage for the damages sustained by Plaintiff.   KORALEWSKI's and MEADE's mishandling of Plaintiff's claim has also caused a delay in their ability to fully repair their Property, which resulted in additional damage.

S.   To this date, Plaintiff's full claim still remains unpaid and Plaintiff still has not been able to properly repair the Property.

T.   PELEUS failed to perform its contractual duty to adequately compensate Plaintiff under the terms of the Policy.   Specifically, PELEUS, KORALEWSKI and MEADE failed and refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff.   PELEUS's, KORALEWSKI's and MEADE's conduct constitutes a breach of the insurance contract between PELEUS and Plaintiff.

U.   KORALEWSKI and MEADE misrepresented to Plaintiff that the damage to the Property was not covered under the Policy by omitting covered damages to the dwelling, roof, and other structures in the estimate KORALEWSKI prepared, even though the damage was caused by a covered occurrence.   KORALEWSKI's and MEADE's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE Section 541.060(a)(1).

9

V.   PELEUS, KORALEWSKI and MEADE failed to make an attempt to settle Plaintiff's
     claim in a fair manner, although they were aware of their liability to Plaintiff under the
     Policy.   PELEUS's, KORALEWSKI's and MEADE's conduct constitutes a violation of
     the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE Section
     541.060 (a)(2)(A).

W.   PELEUS, KORALEWSKI and MEADE failed to explain to Plaintiff the reasons for their
     offer of an inadequate settlement.  Specifically, PELEUS, KORALEWSKI and MEADE
     failed to offer Plaintiff adequate compensation, without any explanation why full
     payment was not being made. Furthermore, KORALEWSKI and MEADE did not
     communicate that any future settlements or payments would be forthcoming to pay for
     the entire losses covered under the Policy, nor did he provide any explanation for the
     failure to adequately settle Plaintiff's claim.   PELEUS's, KORALEWSKI's and
     MEADE's conduct is a violation of the Texas Insurance Code, Unfair Settlement
     Practices. TEX. INS. CODE Section 541.060(a)(3).

X.   PELEUS, KORALEWSKI and MEADE failed to affirm or deny coverage of Plaintiff's
     claim within a reasonable time.  Specifically, Plaintiff did not receive timely indication of
     acceptance or rejection, regarding the full and entire claim, in writing from PELEUS.
     PELEUS's, KORALEWSKI's and MEADE's conduct constitutes a violation of the Texas
     Insurance Code, Unfair Settlement Practices. TEX. INS. CODE Section 541.060(a)(4).

Y.   PELEUS refused to fully compensate Plaintiff, under the terms of the Policy, even
     though PELEUS, KORALEWSKI and MEADE failed to conduct a reasonable
     investigation. Specifically, KORALEWSKI and MEADE performed an outcome-oriented
     investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable

evaluation of Plaintiff's losses to the Property.   PELEUS's, KORALEWSKI's and MEADE's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE Section 541.060 (a)(7).

Z.     PELEUS failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated deadline.   PELEUS's conduct constitutes violation of the Texas Insurance Code, Prompt Payment of Claims, TEX. INS. CODE Section 542.055.

AA.    PELEUS failed to accept or deny Plaintiff's full and entire claim within the statutory mandated deadline of receiving all necessary information.   PELEUS's conduct constitutes violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE Section 542.056.

BB.    PELEUS, KORALEWSKI and MEADE failed to meet their obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, PELEUS, KORALEWSKI and MEADE have delayed full payment of Plaintiff's claim longer than allowed and, to date; Plaintiff has not yet received full payment for their claim. PELEUS's, KORALEWSKI's and MEADE's conduct constitutes violation of the Texas Insurance Code, Prompt Payment of Claims, TEX. INS. CODE Section 542.058.

CC.    From and after the time Plaintiff's claim was presented to PELEUS, KORALEWSKI and MEADE, the liability of PELEUS, KORALEWSKI and MEADE to pay the full claim in accordance with the terms of the Policy was reasonably clear.   However, PELEUS, KORALEWSKI and MEADE have refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to

11

deny the full payment.   PELEUS's, KORALEWSKI's and MEADE's conduct constitutes a breach of the common law duty of good faith and fair dealing.

DD.   PELEUS, KORALEWSKI and MEADE knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.

EE.   As a result of PELEUS's, KORALEWSKI's and MEADE's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who is representing Plaintiff with respect to these causes of action.

FF.   Plaintiff's experience is not an isolated case.   The acts and omissions of PELEUS, KORALEWSKI and MEADE committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of PELEUS, KORALEWSKI and MEADE with regard to handling these types of claims.   PELEUS's, KORALEWSKI's and MEADE's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholder.

## VI. THEORIES OF LIABILITY

### A. Cause of Action for Breach of Contract

Plaintiff realleges and incorporates by reference all previous and subsequent paragraphs herein.

According to the Insurance Policy that Plaintiff purchased, PELEUS, KORALEWSKI and MEADE have the duty to investigate and pay Plaintiff's policy benefits for claims made for covered damages, including additional benefits under the Policy, resulting from a wind and hail storm.   As a result of a Wind and Hailstorm and/or ensuing losses from a wind and hail

storm, both of which are covered perils under the Policy, Plaintiff's Property and personal Property have been damaged.

PELEUS's, KORALEWSKI's and MEADE's failure and refusal, as described above, to pay the adequate compensation as they are obligated to do under the terms of the Policy in question and under the laws of the State of Texas, constitutes a breach of PELEUS's contract with Plaintiff. As a result of this breach of contract, Plaintiff has suffered the damages that are described in this petition.

**B. Cause of Action for Violation of Section 542**

Plaintiff realleges and incorporates by reference all previous and subsequent paragraphs herein.

PELEUS's, KORALEWSKI's and MEADE's acts, omissions, failures and conduct that are described in this petition violate Section 542 of the Texas Insurance Code. Within the timeframe required after the receipt of either actual or written notice of Plaintiff's claim, PELEUS, KORALEWSKI and MEADE did not request from Plaintiff any items, statements, and forms that they reasonably believed at that time would be required from Plaintiff for their claim. As a result, PELEUS, KORALEWSKI and MEADE have violated Section 542 by failing to accept or reject Plaintiff's claim in writing within the statutory timeframe. PELEUS, KORALEWSKI and MEADE also violated Section 542 by failing to pay Plaintiff's claim within the applicable statutory period. In addition, in the event it is determined that PELEUS owes Plaintiff any additional monies on Plaintiff's claim, then PELEUS has automatically violated Section 542 in this case.

**C. DTPA Cause of Action**

Plaintiff realleges and incorporates by reference all previous and subsequent paragraphs herein.

Plaintiff incorporates all the allegations in this petition for this cause of action against PELEUS, KORALEWSKI and MEADE under the provisions of the DTPA. Plaintiff is a consumer of goods and services provided by PELEUS, KORALEWSKI and MEADE pursuant to the DTPA. Plaintiff has met all conditions precedent to bringing this cause of action against PELEUS, KORALEWSKI and MEADE. Specifically, PELEUS's, KORALEWSKI's and MEADE's violations of the DTPA include, without limitation, the following matters:

By their acts, omissions, failures, and conduct that are described in this petition, PELEUS, KORALEWSKI and MEADE have violated Sections 17.46 (b)(2), (5), (7), (9), (12) and (24) of the DTPA. In this respect, PELEUS's, KORALEWSKI's and MEADE's violations include, without limitation, (1) their unreasonable delays in the investigation, adjustment and resolution of Plaintiff's claim, (2) their failure to give Plaintiff the benefit of the doubt, and (3) their failure to pay for the proper repair of Plaintiff's Property on which liability had become reasonably clear.

As described in this petition, PELEUS represented to Plaintiff that its insurance policy and its adjusting and investigative services that were provided by KORALEWSKI and MEADE had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(5) of the DTPA;

As described in this petition, PELEUS represented to Plaintiff that its insurance policy and its adjusting and investigative services that were provided by KORALEWSKI and MEADE

14

were of a particular standard, quality, or grade when they were of another in violation of Section 17.46 (b)(7) of the DTPA;

As described in this petition, PELEUS advertised its insurance policy and its adjusting and investigative services that were provided by KORALEWSKI and MEADE with intent not to sell them as advertised in violation of Section 17.46 (b)(9) of the DTPA;

A.  As described in this petition, PELEUS represented to Plaintiff that its insurance policy and its adjusting and investigative services that were provided by KORALEWSKI and MEADE conferred or involved rights, remedies, or obligations that they did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(12) of the DTPA;

B.  As described in this petition, PELEUS, KORALEWSKI and MEADE failed to disclose information concerning goods or services which were known at the time of the transaction and such failure to disclose was intended to induce Plaintiff into a transaction into which the Plaintiff would not have entered had the information been disclosed, which gives Plaintiff the right to recover under Section 17.46 (b)(24) of the DTPA;

C.  PELEUS, KORALEWSKI and MEADE have breached an express warranty that the damage caused by a wind and hail storm would be covered under the insurance policies. This breach entitles Plaintiff to recover under Sections 17.46 (b)(12) and (19) and 17.50 (a)(2) of the DTPA;

D.  PELEUS's, KORALEWSKI's and MEADE's actions, as described in this petition, are unconscionable in that they took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. PELEUS's, KORALEWSKI's

15

and MEADE's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

E.      PELEUS's, KORALEWSKI's and MEADE's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of PELEUS, KORALEWSKI and MEADE are a producing cause of Plaintiff's damages that are described in this petition.

All of the above-described acts, omissions, and failures of PELEUS, KORALEWSKI and MEADE were done knowingly and intentionally as those terms are used in the Texas Deceptive Trade Practices Act.

**D. Cause of Action for Unfair Insurance Practices**

Plaintiff realleges and incorporates by reference all previous and subsequent paragraphs herein.

Plaintiff incorporates all the allegations in this petition for this cause of action against PELEUS, KORALEWSKI and MEADE under the Texas Insurance Code.  Plaintiff has satisfied all conditions precedent to bringing this cause of action.

KORALEWSKI and MEADE are liable individually for their unfair and deceptive acts, irrespective of the fact that he was acting on behalf of PELEUS, because he is a "person" defined by section 541.002(2).   The term "person" is defined as "any *individual*, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, other legal entity in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS.CODE § 541.002(2). (emphasis added). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1988)

(holding an insurance company employee to be a "person" for the purpose of bringing an action against him or her under the Texas Insurance Code and subjecting him or her to individual liability)).

By their acts, omissions, failures, and conduct, PELEUS, KORALEWSKI and MEADE have engaged in unfair and deceptive acts or practices in the business of insurance in violation of 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus PELEUS's, KORALEWSKI's and MEADE's unreasonable delay in the investigation, adjustment, and resolution of Plaintiff's claims and PELEUS's failure to pay for the proper repair of Plaintiff's Property on which liability had become reasonably clear. They further include PELEUS's, KORALEWSKI's and MEADE's failure to give Plaintiff the benefit of the doubt. Specifically, PELEUS, KORALEWSKI and MEADE are guilty of the following unfair insurance practices:

A.   Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

B.   Engaging in unfair claim settlement practices;

C.   Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

D.   Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear;

E.   Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time;

F.   Refusing to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim; and

G.   Failing to provide promptly to a policyholder a reasonable explanation of the

17

basis in the insurance policy in relation to the facts or applicable law for the denial of a claims or for the offer of a company's settlement.

PELEUS, KORALEWSKI and MEADE have also breached the Texas Insurance Code when they breached their duty of good faith and fair dealing. PELEUS's, KORALEWSKI's and MEADE's conduct as described herein has resulted in Plaintiff's damages that are described in this petition.

All of the above-described acts, omissions, and failures of PELEUS, KORALEWSKI and MEADE were done knowingly as that term is used in the Texas Insurance Code.

**E. Cause of Action for Breach of Duty of Good Faith and Fair Dealing**

Plaintiff realleges and incorporates by reference all previous and subsequent paragraphs herein.

Plaintiff incorporates all the allegations of the preceding paragraphs for this cause of action. By their acts, omissions, failures and conduct, PELEUS, KORALEWSKI and MEADE have breached their common law duty of good faith and fair dealing by failing to pay the proper amounts on Plaintiff's entire claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for this denial. PELEUS, KORALEWSKI and MEADE have also breached this duty by unreasonably delaying payment of Plaintiff's entire claim and by failing to settle Plaintiff's entire claim because PELEUS, KORALEWSKI and MEADE knew or should have known that it was reasonably clear that the claim was covered.

These acts, omissions, failures, and conduct of PELEUS, KORALEWSKI and MEADE are a proximate cause of Plaintiff's damages.

### VII. WAIVER AND ESTOPPEL

PELEUS, KORALEWSKI and MEADE have waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

### VIII. DAMAGES

The above described acts, omissions, failures and conduct of PELEUS, KORALEWSKI and MEADE have caused Plaintiff's damages which include, without limitation, the cost to properly repair Plaintiff's Property and any investigative and engineering fees incurred in the claims.  Plaintiff is also entitled to recover consequential damages from PELEUS's breach of contract.  Plaintiff is also entitled to recover the amount of their claim plus an 18% per annum penalty on that claim against PELEUS, KORALEWSKI and MEADE as damages under Section 542 of the Texas Insurance Code, plus prejudgment interest and attorneys' fees.  All the damages described in this petition are within the jurisdictional limits of the Court.

### IX. STATEMENT OF RELIEF AND DAMAGES OVER $1,000,000

The total damages sought by Plaintiff against PELEUS, KORALEWSKI and MEADE for all elements of damage exceed the sum $1,000,000, including exemplary and punitive damages, penalties, attorneys' fees, interests, and costs.   As a result of PELEUS's, KORALEWSKI's and MEADE's conduct that is described in this petition, Plaintiff pleads out of the expedited actions process governed by Rules 47 and 169 under the Texas Rules of Civil Procedure.  Plaintiff further pleads for judgment for all the other relief to which it deems justly entitled.

### X. ADDITIONAL DAMAGES

PELEUS, KORALEWSKI and MEADE have also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in

the applicable statutes. Because of PELEUS's, KORALEWSKI's and MEADE's knowing and intentional misconduct, Plaintiff is entitled to additional damages as authorized by Section 17.50(b)(1) of the DTPA. Plaintiff is further entitled to the additional damages that are authorized by Section 541 of the Texas Insurance Code.

## XI. EXEMPLARY DAMAGES

PELEUS's, KORALEWSKI's and MEADE's breach of their duty of good faith and fair dealing owed to Plaintiff was done intentionally, with a conscious indifference to the rights and welfare of Plaintiff and with "malice" as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by PELEUS, KORALEWSKI and MEADE are the type of conduct which the State of Texas protects its citizen against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish PELEUS, KORALEWSKI and MEADE for their wrongful conduct and to set an example to deter PELEUS, KORALEWSKI, MEADE, and others similarly situated from committing similar acts in the future.

## XII. ATTORNEYS' FEES

As a result of PELEUS's, KORALEWSKI's and MEADE's conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorneys to prosecute this action and have agreed to pay reasonable attorneys' fees. Plaintiff is entitled to recover these attorneys' fees under Chapter 38 of the Texas Civil Practices and Remedies Code, Sections 541 and 542 of the Texas Insurance Code, and Section 17.50 of the DTPA.

## XIII. WRITTEN DISCOVERY

*Plaintiff's Request for Disclosure, Requests for Production, and Interrogatories to Defendants* are attached hereto.

20

## XIV. JURY DEMAND

Plaintiff asserts Plaintiff's right to a trial by jury, under Texas Constitution Article 1, Section 15, and makes this demand for a jury trial at least 30 days before the date this case is set for trial, in accordance with Texas Rule of Civil Procedure 216.  Plaintiff tenders the fee of $40.00, as required by Texas Government Code Section 51.604.

## XV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that PELEUS, KORALEWSKI and MEADE be cited to appear and answer herein, and that upon trial hereof, said Plaintiff has and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, both as to actual damages, consequential damages, treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of court, for prejudgment and post judgment interest as allowed by law, and for any other and further relief, at law or in equity, to which they may show themselves to be justly entitled.

Respectfully submitted,

SOLIS & SMITH, P.C.
12703 Spectrum Drive, Suite 100
San Antonio, Texas  78249
Telephone:  (210) 223-5000
Telecopier:  (210) 223-5007

By:_____

    CARLOS E. SOLIS
    State Bar No. 24002972
    carlos@solisandsmithlaw.com

    PAUL A. SMITH, JR.
    State Bar No. 24015025
    paul@solisandsmithlaw.com

ATTORNEYS FOR PLAINTIFF,
JQJ, LLC

22

CAUSE NO. _____

| | | |
|---|---|---|
| JQJ, LLC | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | ___ JUDICIAL DISTRICT |
| | § | |
| PELEUS INSURANCE COMPANY, | § | |
| THOMAS ANDREW KORALEWSKI | § | |
| AND HEIDI JENNIFER MEADE | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S REQUEST FOR DISCLOSURE, REQUESTS FOR PRODUCTION, AND INTERROGATORIES TO DEFENDANTS PELEUS INSURANCE COMPANY, THOMAS ANDREW KORALEWSKI AND HEIDI JENNIFER MEADE

TO:  Defendants, PELEUS INSURANCE COMPANY, THOMAS ANDREW KORALEWSKI and HEIDI JENNIFER MEADE, by and through their registered agents for service of process along with Plaintiff's Original Petition, which is attached hereto.

COMES NOW JQJ, LLC ("Plaintiff") and, pursuant to the Texas Rules of Civil Procedure, hereby serves their Request for Disclosure, Requests for Production, and Interrogatories. Plaintiff requests that Defendant timely and properly respond to these discovery requests within 50 days of service in accordance with the Texas Rules of Civil Procedure.

23

Respectfully submitted,

SOLIS & SMITH, P.C.
12703 Spectrum Drive, Suite 100
San Antonio, Texas  78249
Telephone:  (210) 223-5000
Telecopier:  (210) 223-5007

By: _____
       CARLOS E. SOLIS
       State Bar No. 24002972
       carlos@solisandsmithlaw.com

       PAUL A. SMITH, JR.
       State Bar No. 24015025
       paul@solisandsmithlaw.com

       ATTORNEYS FOR PLAINTIFF,
       JQJ, LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served along with Plaintiff's Original Petition on the Defendants in accordance with the Texas Rules of Civil Procedure.

_____

CARLOS E. SOLIS
PAUL A. SMITH, JR.

24

## INSTRUCTIONS

1. Produce the Documents in your possession, custody, or control, as such phrase is defined in Texas Rule of Civil Procedure 192.7(b), described in the attached requests for production, at the offices of the undersigned counsel within thirty (30) days following service of the request upon you or your attorney.

2. Please respond to the attached Interrogatories in accordance with the requirements of Texas Rule of Civil Procedure 197 and return your responses to the offices of the undersigned counsel within thirty (30) days following service of the request upon you or your attorney.

3. Please respond to the attached Request for Production in accordance with the requirements of Texas Rule of Civil Procedure 196 and return your responses to the offices of the undersigned counsel within thirty (30) days following service of the request upon you or your attorney

4. Pursuant to Rule 197.2(d), your Interrogatory answers must be verified. Pursuant to Rule 197.2(c), where appropriate, you may optionally produce records in response to the Interrogatories. Place your response to each Request and Interrogatory in a separate document and restate each Request and Interrogatory followed by your response.

5. Singular and masculine forms of any nouns or pronouns shall embrace and be applied as the plural, feminine, or neuter, as the context requires, and vice versa.

6. The past tense of any verb shall embrace and be applied as the present tense, as the context requires or as applicable, or vice versa.

7. Each request is to be construed and answered or responded to separately and independently, and is not to be referenced to any other request for purposes of limitations.

8. These requests and interrogatories and your answers to them may be offered in evidence at the trial of this case.

9. Your failure to respond to these requests and interrogatories as required by the Texas Rules of Civil Procedure within the time required may result in entry of judgment against you, assessment of attorney's fees against you, or other sanctions as determined by the Court.

10. These requests are continuing in nature and require supplementation as soon as practical if you or your attorney obtain information which reveals that your answers were incorrect or incomplete when made or that your answers are no longer correct or complete.

11. Documents produced pursuant to these requests should be tendered either in the precise form or manner as they are kept in the usual course of business, or organized and labeled to correspond with the categories in the requests to which they respond.

12.    These requests include request for production of electronic or magnetic data by either: (1) providing the undersigned counsel with access to the medium upon which such date is kept so that such data may be reviewed, copied and/or printed; or (2) providing the undersigned counsel with a copy of such data on disk, CD, tape or other acceptable medium in a form in which it may be reviewed, copied and/or printed.

13.    The Interrogatories and Requests herein requesting information concerning legal contentions and the factual bases of such contentions are propounded pursuant to Texas Rules of Civil Procedure, Paragraph 192.3(j).

14.    If you withhold any Documents from production, please identify the information and material withheld and the specific privilege asserted for each item or group of items withheld, as required by Texas Rules of Civil Procedure 193.3(b). **THIS IS A REQUEST FOR A PRIVILEGE LOG**.

## DEFINITIONS

1.  "Defendant" or "PELEUS INSURANCE COMPANY" and/or "THOMAS ANDREW KORALEWSKI" and/or "HEIDI JENNIFER MEADE," "You," "Your," and/or "Yourself" means Defendants, PELEUS INSURANCE COMPANY and/or THOMAS ANDREW KORALEWSKI and/or HEIDI JENNIFER MEADE, and their agents, representatives, attorneys, and any other person or entity acting on behalf of them or any of the foregoing.

2.  "Plaintiff" means Plaintiff, JQJ, LLC, and their agents, representatives, attorneys, and any other person or entity acting on behalf of them or any of the foregoing.

3.  The "Property" means the residence(s) specifically described in Plaintiff's Petition and which is the insured's property(ies) at issue in this Lawsuit.

4.  The "Lawsuit" means the above-styled and numbered case.

5.  "Party" or "Parties" shall mean any and/or all parties to the Lawsuit, including Plaintiff and/or any Defendants.

6.  The "Petition" means Plaintiff's Original Petition and/or any amendments and supplements thereto filed in the Lawsuit.

7.  The "Policy" means Policy Number(s) issued by Defendant, which is the basis of this Lawsuit.

8.  The word "Document" or "Documents" is used herein in its broadest sense to include any medium upon or with which information is recorded or preserved which belongs to, or is in or subject to the possession, custody or control of, any of the Parties named and defined hereinabove, by whomever generated or received, including without limitation: writings; printings; drawings; graphs; charts; notes; typewritings; photographs; slides; motion pictures; videotapes or cassettes; phonographs records; type or other mechanical recordings; computer records; electronic mail (e-mail - whether in electronic form or printed on paper or in any other form); information storage devices; disks; or printouts; brochures; pamphlets; maps; surveys; calendars; contracts; interoffice communications; telephone recordings; ledgers; books; statements of account; journals; notices; letter; catalogs; canceled checks; bank statements; invoices; bills; diaries; purchase orders; memoranda of telephone communications; telegrams; telexes or "TWX's"; telecopies; drafts or preliminary versions of the foregoing; communications to or from any governmental or law enforcement sub-division, officer, or agency; and, any other instrument, writing, recording, or data compilation of any nature whatsoever, including any carbon, photographic, microfilm, or other type of copy of such items, if such copy is different from the original by reasons of any markings, additions, commentaries, revisions, deletions, or substitutions. **This definition requires you to search for and produce electronic Documents.**

9.      The term "person" as used herein shall mean and include an individual, sole proprietorship, association, firm, partnership, joint venture, corporation, board, committee, agency, commission, or any other legal entity of any type for any purpose, whether public or private.

10.     The terms "reflecting" or "evidencing," when used in reference to a certain subject or thing as used herein, shall mean and include to reflect, to evidence, to mention, to discuss, to describe, to explain, to embody, to constitute, or to include that subject or thing.

11.     The term "correspondence" means the written or unwritten transmittal of information or data in the form of facts, ideas, inquiries or otherwise, including but not limited to e-mails, text messages, instant messages, written Documents, facsimiles, saved computer data, and audio and video recordings.

12.     "Meeting" means any encounter between two or more persons during which an oral or written communication occurred and includes, but is not limited to, formal and informal gatherings, conversations and telephone conversations.

13.     The term "communicate" or "communication" shall mean (a) every manner or means of communication, disclosure, transfer, or exchange of information and, (b) every communication, disclosure, transfer, or exchange of information, whether made or accomplished orally or by Document, whether in person, by telephone, mail, e-mail, facsimile, personal delivery, or otherwise. Communications includes, but is not limited to, all agreements.

14.     The term "or" as used herein shall mean and include "and" or "and/or".

15      The term "all" as used herein shall mean "any" and "all".

16.     The term "including" as used herein shall mean "including but not limited to".

17.     The term "fact" as used herein shall include, without limitation, every relevant matter, occurrence, act, event, transaction, occasion, meeting, Document, instance, circumstance, recitation, writing, or other happening.

18.     Certain other terms may be defined within the discovery requests herein.

## REQUEST FOR DISCLOSURE

Pursuant to Texas Rule of Civil Procedure 194.2, Plaintiff request that you disclose, within 50 days of the service of this request, the information or material described in Rule 194.2 (a) - (l).

## REQUESTS FOR PRODUCTION AND INTERROGATORIES

Please produce the following documents or tangible things and/or answer the following interrogatories, as applicable:

1. A complete, certified copy of the insurance Policy(s) in effect on the date of Plaintiff's claim(s).

2. The entire claims investigation files generated and maintained by Defendant in the ordinary course of business pertaining to Plaintiff's claim(s) making the basis of this lawsuit.

3. Your entire claim file regarding the Property.

4. All training and educational materials which instruct claims adjusters or claims handlers in handling claims for property damage and water damage coverage under homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

5. All training and educational materials which instruct claims adjusters or claims handlers in handling claims for coverage of property and water damage claims under homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

6. All procedure or policy manuals or guides meant to guide and assist claims adjusters or claims handlers in handling claims for property and water damages, including the criteria for and the process for evaluating whether coverage exists under homeowners' policies in Texas. This request is limited to the last five (5) years.

7. All procedure or policy manuals or guides meant to guide and assist claims adjusters or claims handlers in handling claims for property and water damages to the house, including the criteria for and the process for evaluating whether coverage exists under homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

8. All communications and documents, including electronic, between Defendant and Plaintiff regarding Plaintiff's claim(s).

9. All communications and documents, including electronic, between Defendant and any third party regarding Plaintiff's claim(s).

10. All communications and documents, including electronic, between Defendant and any other defendant(s) in this Lawsuit regarding Plaintiff's claim(s).

11. All communications and documents, including electronic, between Defendant's business departments including all persons part of the Defendant's company regarding Plaintiff's claim(s).

12. All communications and documents Defendant sent to any other defendant(s) in this Lawsuit regarding Plaintiff or the Property, after Plaintiff made their claim(s) for coverage.

13. All photographs, diagrams, drawings, or other graphic depictions of Plaintiff's and/or the Property.

14. Any and all documents, reports, estimates, data, emails, notes, photos, videos, manuals, guides, and summaries regarding the insurance claim(s) made the basis of this Lawsuit, including but not limited to all estimates prepared by all claims adjusters of Defendant regarding the Property and all reports prepared by all engineers hired by Defendant to inspect, test, or observe the Property.

15. All reports and other documents from governmental agencies or offices regarding Plaintiff's Property or containing officially kept information regarding Plaintiff's Property.

16. Any and all claims files and claim reports, including but not limited to notes, emails, data, photos, videos, manuals, guides, summaries and claim documents, regarding all homeowner insurance claims made by Plaintiff's under their homeowner insurance policies, specifically regarding damage to the exterior and interior of Plaintiff's property. This request is limited to the last ten (10) years.

17. Any and all records and/or documents explaining criteria utilized to qualify vendors for the "approved vendor list."

18. Any and all records and/or documents maintained by person(s) responsible for maintaining and updating the "approved vendors list."

19. Any and all records and/or documents maintained by person(s) responsible for creating the criteria utilized to qualify vendors, including contractors and roofing companies, for the "approved vendors list".

20. All documents including reports, estimates, data, emails, testing, sampling, videos and photographs received by Defendant from any source regarding inspections of Plaintiff's property.

21. Any and all records Defendant received, including those obtained by way of deposition by written questions, regarding Plaintiff's Property.

22.     Any and all records or documents Defendant has reviewed and/or obtained regarding Plaintiff's Property.

23.     Any and all claims files Defendant has reviewed and/or obtained regarding Plaintiff's Property.

24.     Any and all records or documents Defendant has reviewed and/or obtained by third parties regarding Plaintiff's Property.

25.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling first party insurance claims, and/or avoiding charges of bad faith. This request is limited to the last five (5) years.

26.     All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner, or their agents, regarding practices in the handling of claims for property and water damage under homeowner insurance policies in Texas. This request is limited to the last five (5) years.

27.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling first party insurance claims, or avoiding charges of bad faith. This request is limited to the last five (5) years.

28.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §541.060 *et seq*. This request is specifically limited to the last five (5) years.

29.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §542.055 *et seq*. This request is specifically limited to the last five (5) years.

30.     Any and all materials, documents, statements and/or files that demonstrate Defendant's net worth and Defendant's net income. This request is limited to the last five (5) years.

31.     Any and all materials, documents, statements and/or files that reflect complaints and/or lawsuits, filed by insured's against Defendant regarding the handling, review and/or adjusting of homeowner claims in Texas. This request is limited to the last five (5) years.

32.     A copy of each advertisement Defendant has used, published and/or distributed, through any means, in Texas. This request is limited to the last five (5) years.

33.     Any and all reference materials, handouts, manuals, outlines, articles, and/or documents used or relied upon by Defendant to conduct any seminars and/or continuing education classes for Defendant's employees and/or adjusters, regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, and property

damage and water damage claims in Texas. This request is limited to the last five (5) years.

34.    Any and all materials, handouts, manuals, outlines, articles and/or documents issued by Defendant's to claims representatives and/or adjusters, or received by claims Representatives and/or adjusters, or relied upon by claims representatives and/or adjusters, pertaining to the adjuster and/or handling of homeowner insurance claims, commercial insurance claims, and property damage and water damage claims in Texas. This request is limited to the last five (5) years.

35.    Any and all reference materials, handouts, manuals, outlines, articles, and/or documents distributed and/or disbursed to Defendant's employer, employees, agents and/or representatives in connection with attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, property and water damage claims in Texas, within the last five (5) years.

36.    Any and all material reflecting Defendant's attendance policies for adjusters and claims representatives at seminars and/or continuing education classes regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims and property damage and water damage claims in Texas. This request is limited to the last five (5) years.

37.    Any and all materials, documents, files and/or reports sent to Defendant by its employer, employees, agents and/or representatives on a monthly, weekly, or daily basis regarding Plaintiff's claim(s). Include any and all field notes and summaries of the room-by-room scope of Plaintiff's property.

38.    Any and all materials, documents, files and/or reports containing list(s) of contractors and engineering companies that have been approved and/or recommended for performance of services for Defendant in Texas, specifically related to homeowner insurance claims. This request is limited to the last five (5) years.

39.    Any and all computer programs, electronic data, documents and/or manuals used by the adjusters and claims representatives to perform property damage and water damage estimates relating to homeowner insurance claims in Texas, including a complete copy of the computer program used to adjust Plaintiff's claim(s). This request is limited to the last five (5) years.

40.    Any and all reference materials, handouts, manuals, outlines, articles and/or documents that have been distributed by and/or disbursed to Defendant regarding the price estimates of contractors and changes of those estimates within different geographical areas of the State of Texas. This request is limited to the last five (5) years.

41.    Any and all materials, documents, files and/or reports of contractors and engineering companies that have been approved and/or recommended for performance of services for

Defendant in Texas. This request is limited to the last five (5) years.

42. Any and all materials, documents, files, invoices, and/or reports of any and all contractors and engineering companies retained to investigate, inspect, and/or evaluate Plaintiff's claim(s) that are the subject of this lawsuit, prepared on behalf of the Defendant.

43. Any and all materials, documents, files, invoices, and/or reports of any and all contractors and engineering and/or foundation repair companies retained to investigate, inspect, and/or evaluate claims similar in nature to Plaintiff's claim(s) asserted in this lawsuit, prepared on behalf of Defendants. This request is limited to the State of Texas. This request is limited to the last five (5) years.

44. Any and all activity logs relating to Plaintiff's claim(s) for property and water damage claims, to their Property, specifically the claim(s) made the basis of this Lawsuit.

45. Any and all documents reflecting company guidelines, procedures, or policies that serve as criteria for evaluating whether claims are covered or excluded by any policy provisions Defendant contends applied to Plaintiff's claim(s).

46. Any and all organizational charts for Defendant.

47. Any and all organizational charts or diagrams for each department, unit, or section of Defendant to which Plaintiff's claim(s) was assigned. This request is limited to the last five (5) years.

48. Any and all charts or diagrams reflecting the chain of command or supervisory hierarchy relating to each person involved in handling Plaintiff's claim(s).

49. Any and all documents reflecting or relating to Defendant's decisions to pay or deny additional expenses to or on behalf of Plaintiff in this case.

50. Any and all records reflecting payment to Plaintiff concerning Plaintiff's claim(s) made the basis of this suit.

51. Any and all documents, including correspondence and checks, exchanged between Defendant and any and all vendors concerning Plaintiff's claim(s).

52. Any and all documents relating to or reflecting referrals of vendors to Plaintiff or any insureds.

53. If you are withholding documents based upon the assertion of a privilege, please produce a privilege log, detailing with reasonable particularity a description of the documents withheld, the number of documents, and the privilege which Defendant claims properly precludes the information from being discovered.

54.    Any and all advanced or specialized certifications of personnel who inspected, investigated, and/or supervised the adjusting of the claim(s) pertaining to Plaintiff's Property.

55.    Any and all documents, including contracts, rules, guidelines and/or instructions exchanged between Defendant, Plaintiff, and any other entities with whom Defendant worked or communicated regarding Plaintiff's Property.

56.    All physical and/or tangible items and/or potentially usable evidence obtained by or on behalf of Defendant from the Property.

57.    Any and all indemnity agreement between Defendant and any other Defendant, person, entity, firm, or corporation against which a claim of indemnification might be brought because of the facts in this lawsuit.

58.    Any and all complaint policies and procedures of Defendant regarding the handling of complaints made by homeowner insured's. This request is limited to the last five (5) years.

59.    Copies of all job descriptions of employees that adjusted or in any way supervised the handling of Plaintiff's claim(s) regarding the Property.

60.    All non-privileged e-mails regarding the investigation, adjusting and/or handling of the claim(s) made the basis of this Lawsuit.

61.    All e-mails between Defendant's adjusters, engineers, supervisors, officers, and/or executives regarding changes in the educational programs relating to the handling of property damage and water damage claims.

62.    All computer files, databases, electronically-stored information or computer-stored information regarding property damage and water damage that have been compiled, prepared and/or supervised by Defendant, whether or not they are in Defendant's possession or in the possession of another entity.

63.    True and complete copies of all billing records from any and all adjusters and engineers regarding the claim(s) made the basis of this Lawsuit.

64.    True and complete copy of activity logs filed by the staff and adjusters on the file.

65.    Any and all reports, documents or correspondence containing the names and locations of all adjusters who have worked on this file to the present.

66.    True and complete copies of all billings on the file from the adjusters, including the time sheets or documentation used to justify the billing.

67.    Any and all reports, documents or correspondence reflecting the reserving and payment history of indemnity, expenses and vendors on this file including but not limited to dates, changes, and requests made by adjusters. This request is limited to the last five (5) years.

68.    Any and all correspondence and lawsuits involving vendors, staff or management involved with property and/or water damage claims from 2003 to present.

69.    Any and all correspondence and lawsuits concerning the issues of honesty, conflict of interest, criminal actions, past criminal records, criminal conduct, fraud investigation and/or inappropriate behavior of any person associated with the handling of claims files, management of property damage and water damage, including staff and vendors.

70.    Any and all answers made in previous discovery requests for lists of property and water damage databases.

71.    Any and all answers and affidavits made by Defendant and its counsels in previous discovery requests for training procedures, training manuals for property and water damage claims.

72.    Any and all reports, documents or correspondence reflecting the history of payment and reserves on this file.

73.    Any and all reports, documents or correspondence containing names of designated individuals who gave testimony as Person Most Knowledgeable as a corporate representative of Defendant for property claims, property damage and water damage for 2003 through the present, including but not limited to any lists of the lawsuits where testimony was given.

74.    Any and all training manuals used by you to train your adjusters on property damage and water damage claims. This request is limited to the last five (5) years.

75.    Any and all correspondence from Defendant to and from vendors regarding any instructions, procedures, changes, training, payments and billing for property, property damage and water damage claims for 2003 through the present, including but not limited to computer disks, e-mails, paperwork and manuals.

76.    Any and all reports, documents, or correspondence containing a list of attendees and dates and locations of all meetings conducted by Defendant for all the adjusters and Defendant staff for property damage and water damage claims training. This request is limited to the last five (5) years.

77.    Any and all reports, documents or correspondence containing lists of files with written complaints or DOI complaints on property damage and water damage claims previously gathered and produced in other TDI complaints or lawsuits. This request is limited to the last five (5) years.

78.     Any and all reports, documents or correspondence containing lists of all suits filed against Defendant or its entities or affiliates nationwide containing an element of property damage and water damage disputes for 2003 through the present.

79.     Any and all reports, documents or correspondence containing lawsuits where lists of all suits filed against Defendant or its entities or affiliates nationwide containing an element of property damage and water damage or disputes for 2003 through the present were previously produced.

80.     Copies of front and back of all checks paid under the insurance Policy issued by Defendant for which an insurance claim was filed by Plaintiff that forms the basis of this Lawsuit. (Specifically, the insurance policy in effect during the time of the insurance claim).

81.     Copies of the front and back of all checks paid on the insurance claim made the basis of this Lawsuit.

82.     Copies of the front and back of each negotiated check(s) made payable solely or co-payable to Plaintiff under the insurance Policy issued by Defendant for which an insurance claim was filed by Plaintiff that forms the basis of this Lawsuit. (Specifically, the insurance policy in effect during the time of the insurance claim).

83.     Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiff regarding the insurance claim made the basis of this lawsuit.

84.     Copies of the front and back of each check made payable solely or co-payable to Plaintiff under the insurance Policy issued by Defendant for which an insurance claim was filed by Plaintiff that forms the basis of this Lawsuit. (Specifically, the insurance policy in effect during the time of the insurance claim).

85.     Copies of the front and back of each check made payable solely or co-payable to Plaintiff regarding the insurance claim made the basis of this lawsuit.

86.     Studies commissioned by Defendant including any done by a law firm to analyze their claim(s) management strategies and/or to help them improve corporate profits.

87.     Affidavits or depositions of the employee(s) who handled Plaintiff's claim(s) to their supervisors in other cases involving this same or similar allegations in this case.

88.     The entire underwriter's file for underwriting the insurance policy made the basis of this Lawsuit.

89.     All notes, reports, documents, or applications created and/or generated by Defendant's underwriting department related to the insurance Policy made the basis of this lawsuit.

90.   All documents and communications, including electronic, between any engineer(s) or engineering company(s), used to evaluate Plaintiff's claim(s), or other person(s) used in handling Plaintiff's claim(s) and Defendant in the last five years regarding, in any way, the investigation of a homeowners' residence, commercial building or church involving damages to the structures or its contents.

91.   State the name, address, telephone number, and position or job title of all persons answering these interrogatories.

92.   If you contend that any conditions precedent to Plaintiff's recovery have not been met, whether said conditions be stated in the insurance policy or required by law, please state what conditions have not been met and describe the factual bases for such contention.

93.   List the date(s) Defendant requested Plaintiff to provide any of the named defendants in this Lawsuit with requested information which Defendant contends was required in order to properly evaluate Plaintiff's claim(s).

94.   List the date(s) Defendant received Plaintiff's notice of claim(s) for coverage for property damages and the date(s) Defendant first acknowledged Plaintiff's notice of claim(s) and in what form the notice of claim was submitted.

95.   If you contend that Plaintiff did not provide any of the named defendants in this Lawsuit with requested information which you contend was required in order to properly evaluate Plaintiff's claim(s), please state what information was requested and not provided and the dates of such alleged requests.

96.   State the name, address, telephone number, and job title or position of all persons who investigated, reviewed, handled, or made decisions regarding Plaintiff's claim(s). For all such persons who are no longer employees, agents, or representatives of any defendant, please so indicate and provide the person's last known address and telephone number.

97.   State every basis, in fact and in the terms of Plaintiff's Policy, for Defendant's denial and/or recommendation of denial of Plaintiff's' claim(s) under the Policy.

98.   State every basis, in fact and in the terms of Plaintiff's Policies, for Defendant's failure to pay for Plaintiff's full damage claim(s) under the Policy.

99.   State every basis, in fact and in the terms of Plaintiff's Policy, for the amount of money Defendant has either paid or offered to pay, if any, for Plaintiff's claim(s) under the Policy.

100.  State the cause number, style, and court for each lawsuit filed against Defendant in the last five years alleging misconduct, improper claims handling, bad faith, violations of Texas Insurance Code §541.060 *et seq* or violations of Texas Insurance Code §542.055 *et seq.* in the handling of first party claims for property damage and water damage coverage

under homeowners' insurance policies.

101. State the legal theories and describe the factual bases for your contention, if you so contend, that Defendant fully complied with each of the claims handling requirements codified in Texas Insurance Code §541.060.

102. State the legal theories and describe the factual bases for your contention, if you so contend, that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.055.

103. State the legal theories and describe the factual bases for your contention, if you so contend, that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.056.

104. State the legal theories and describe the factual bases for your contention, if you so contend, that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.058.

105. State the name, address, and telephone number of each policyholder who gave Defendant written notice, within the last five years, of a complaint about Defendant's handling of first party claims for property and water damage coverage under homeowner insurance policies in Texas.

106. State the name, address, and telephone number of each policyholder from whom Defendant recorded a complaint, within the last five years, about Defendant's handling of first party claims for property and water damage coverage under homeowner policies in Texas.

107. For each complaint identified in the responses to the two interrogatories immediately preceding this interrogatory, please state whether any Texas governmental regulatory agency communicated with Defendant regarding the complaint, or whether Defendant communicated with any governmental agency regarding the complaint. If the response is yes for any such complainant, state the name of the agency, the name of the government's representative with whom Defendant exchanged communication, and the reason for the governmental agency's involvement.

108. For each investigation by a Texas governmental agency within the last five years into Defendant's practices when handling first party claims for property and water damage coverage under homeowners' policies, state the name of the agency, the names of all investigators, and the names of all government representatives with whom Defendant communicated for purposes of the investigation.

109. Identify by name, address, and telephone number, all persons or entities, agency or agents, and brokers that have issued Plaintiff's Policy.

# 68881

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| BEXAR HAIL | § | |
| | § | BEXAR COUNTY, TEXAS |
| COMMERCIAL | § | |
| | § | |
| CLAIM LITIGATION | § | CIVIL JUDICIAL DISTRICT COURTS |

## STANDING PRETRIAL ORDER CONCERNING
## BEXAR COUNTY COMMERCIAL HAIL CLAIMS

This order applies to pretrial matters in commercial property insurance cases filed in the District Courts of Bexar County, Texas that involve insurance disputes arising from the hail storms occurring in Bexar County in April and May of 2016. The purpose of this order is to expedite pretrial matters, discovery and mediation in order to minimize court costs and litigation expenses.

This order shall be posted on the Bexar County District Clerk website and shall be attached to the Original Petition of applicable cases. All attorneys and parties should endeavor to notify others about this order.

Parties seeking to be excused from any part of this order must set a hearing and request relief from the court.

**AUTOMATIC ABATEMENT** – The filing of an original answer by the commercial insurance carrier shall trigger an immediate and automatic abatement. The case shall remain abated until 30 days after a mediation impasse.

The abatement period will apply to all court ordered deadlines and Rule 190 discovery deadlines. The abatement period will not apply to the deadlines in this order or to any statutory deadline, interest or penalties that may apply under any statutory code or law. The parties may send written discovery during the abatement time period, however, the responses and objections to those discovery requests will not be due until 30 days after the end of the abatement period.

**MEDIATION** – The parties shall agree to a mediator and to a mediation date. An Agreed Mediation Order, in the form attached, shall be filed with the court within 120 days after the answer is filed.

Within 15 days of an unsuccessful mediation, the parties will submit a proposed Agreed Scheduling Order to the court.

**DISCOVERY** -- Within 120 days of the filing of an answer by the commercial insurance carrier, the parties will use their best efforts to exchange information and documentation pertaining to the commercial property, including the following: expert reports, engineering reports, estimates of damage or repairs; contents lists for contents damage claim(s); photographs; repair receipts or invoices; the non-privileged portions of the commercial insurance carrier and adjusting company's claims file (including all claim diary notes, activity logs, loss notes and email correspondence regarding the insurance claim); payment ledger, payment log and/or proof of payment from the insurance carrier; a copy of the insurance policy in effect at the time of the respective storm claim(s); and the non-privileged portions of the underwriting file. If the insurance carrier is not in possession of the adjusting company's/adjuster's claims file, and the adjusting company/adjuster is not named as a party in the lawsuit and represented by separate counsel, then the insurance carrier shall seek the adjusting company's claims file and use their best efforts to exchange this information within the 120 day time period. The insurance carrier is also ordered to notify

# 68881

# 68881

the independent adjusting company that all emails, activity notes and loss diary notes pertaining to the hail storm claim in litigation shall be preserved and not destroyed. Finally, a privilege log will also be produced in accordance with the Texas Rules of Civil Procedure for any redactions or privileges asserted. Within 180 days of the filing of an answer by the commercial insurance carrier, the parties will use their best efforts to exchange accounting and financial documentation and other information pertaining to any claims for business interruption, loss of business income, lost profits, inventory or food loss (provide list with values), lost business expense, accounts receivable and any other business loss claim.

Any expert reports, engineering reports, contractor estimates or any other estimates of damages or repairs obtained pursuant to this order for settlement, demand, or mediation purposes and exchanged prior to mediation shall be for mediation purposes only and shall be considered confidential, except that any estimates and/or reports that are part of the claims file, which were obtained or prepared during the claims handling, shall not be considered confidential under this paragraph. However, if a consultant, whose report is produced for mediation, is designated as a retained testifying expert and does not produce a subsequent report for use at trial, the mediation report shall not remain confidential.

Confidential reports and estimates are only confidential for the lawsuit in which they are being used. Confidential expert reports designated for mediation purposes shall be returned to the providing party within 14 days of a written request.  Such reports shall not be discoverable or admissible at trial or any hearing.  If the party procuring the report designates the expert to testify, such party shall have the right to prevent discovery or testimony by the expert regarding the mediation report and any opinions therein, provided that a subsequent report is produced.  The procuring party may use data such as measurements and photographs without waiving this privilege. Nothing herein shall prohibit the use of those reports and estimates in any subsequent insurance claims or lawsuits involving the same commercial insurance carrier.

Once a mediation date and mediator are agreed to by all parties, the commercial insurance carrier shall be permitted to inspect the property involved in the lawsuit (as soon as practicable) prior to mediation. If mediation is unsuccessful, the commercial insurance carrier and other defendants may re-inspect the property with the same, new or additional experts pursuant to the Texas Rules of Civil Procedure.

Signed on November 30, 2016

Michael E. Mery
Michael Mery, Judge
37th District Court

Stephani A. Walsh
Stephani Walsh, Judge
45th District Court

Antonia Arteaga, Judge
57th District Court

David A. Canales, Judge
73rd District Court

2

# 68881

68881

John D. Gabriell, Jr., Judge
131st District Court

Renée Yanta, Judge
150th District Court

Laura Salinas, Judge
166th District Court

Cathleen Stryker, Judge
224th District Court

Peter Sakai, Judge
225th District Court

Richard Price, Judge
285th District Court

Sol Casseb III, Judge
288th District Court

Karen H. Pozza, Judge
407th District Court

Larry Noll, Judge
408th District Court

Gloria Saldaña, Judge
438th District Court

11/30/2016 VOL 4655 PG 1818

3

68881

# 68881

### AGREED MEDIATION ORDER

Pursuant to the Standing Pretrial Order Concerning Bexar County Commercial Hail Claims, the parties agree to the following mediation date and mediator:

Date: _____

Mediator: _____

The court, hereby, approves and orders the above date and mediator as agreed by the parties.

Each side shall pay an equal portion of the mediation fee.

All parties must have in attendance a representative with full authority to enter into a final settlement agreement. The following shall be personally in attendance at the mediation until excused by the mediator:

    1.     An attorney of record for each party, unless the party is self-represented.

    2.     All individual parties, either plaintiff or defendant, except that individual defendant adjusters and insurer employee defendants are not ordered to attend so long as a representative with full authority to negotiate and settle on their behalf is present.

    3.     A representative of each non-individual party, unless the parties agree otherwise in writing.

Signed and entered on _____, 2016.


_____
Judge Presiding

# 68881

## CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY)*: _____   COURT *(FOR CLERK USE ONLY)*: _____

STYLED **JQJ, LLC vs. Peleus Insurance Company, Thomas Andrew Koralewski and Heidi Jennifer Meade**

*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment motion for modification or enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| Name:<br>CARLOS E. SOLIS<br><br>Address:<br>12703 Spectrum Drive, Suite 100<br><br>City/State/Zip:<br>San Antonio, Texas 78249<br><br>Signature:<br>*Carlos E. Solis* | Email:<br>carlos@solisandsmithlaw.com<br><br>Telephone:<br>(210) 223-5000<br><br>Fax:<br>(210) 223-5007<br><br>State Bar No:<br>24002972 | Plaintiff(s)/Petitioner(s):<br><br>JQJ, LLC<br><br>Defendant(s)/Respondent(s):<br><br>PELEUS INSURANCE COMPANY, THOMAS ANDREW KORALEWSKI AND HEIDI JENNIFER MEADE<br><br>[Attach additional page as necessary to list all parties] | ☑Attorney for Plaintiff/Petitioner<br>☐Pro Se Plaintiff/Petitioner<br>☐Title IV-D Agency<br>☐Other:<br><br>Additional Parties in Child Support Case:<br><br>Custodial Parent:<br><br>Non-Custodial Parent:<br><br>Presumed Father: |

### 2. Indicate case type, or identify the most important issue in the case *(select only 1)*:

| Civil | | | Family Law | |
|---|---|---|---|---|

| Contract | Injury or Damage | Real Property | Marriage Relationship | Post-judgment Actions (non-Title IV-D) |
|---|---|---|---|---|
| *Debt/Contract*<br>☐Consumer/DTPA<br>☐Debt/Contract<br>☐Fraud/Misrepresentation<br>☐Other Debt/Contract:<br><br>*Foreclosure*<br>☐Home Equity—Expedited<br>☐Other Foreclosure<br>☐Franchise<br>☑Insurance<br>☐Landlord/Tenant<br>☐Non-Competition<br>☐Partnership<br>☐Other Contract: | ☐Assault/Battery<br>☐Construction<br>☐Defamation<br>*Malpractice*<br>☐Accounting<br>☐Legal<br>☐Medical<br>☐Other Professional<br>Liability:<br>☐Motor Vehicle Accident<br>☐Premises<br>*Product Liability*<br>☑Asbestos/Silica<br>☐Other Product Liability<br>List Product:<br><br>☐Other Injury or Damage: | ☐Eminent Domain/<br>Condemnation<br>☐Partition<br>☐Quiet Title<br>☐Trespass to Try Title<br>☐Other Property:<br><br>**Related to Criminal Matters**<br>☐Expunction<br>☐Judgment Nisi<br>☐Non-Disclosure<br>☐Seizure/Forfeiture<br>☐Writ of Habeas Corpus—<br>Pre-indictment<br>☐Other: | ☐Annulment<br>☐Declare Marriage Void<br>*Divorce*<br>☐With Children<br>☐No Children<br><br>**Other Family Law**<br>☐Enforce Foreign<br>Judgment<br>☐Habeas Corpus<br>☐Name Change<br>☐Protective Order<br>☐Removal of Disabilities<br>of Minority<br>☐Other: | ☐Enforcement<br>☐Modification—Custody<br>☐Modification—Other<br>**Title IV-D**<br>☐Enforcement/Modification<br>☐Paternity<br>☐Reciprocals (UIFSA)<br>☐Support Order<br><br>**Parent-Child Relationship**<br>☐Adoption/Adoption with<br>Termination<br>☐Child Protection<br>☐Child Support<br>☐Custody or Visitation<br>☐Gestational Parenting<br>☐Grandparent Access<br>☐Paternity/Parentage<br>☐Termination of Parental<br>Rights<br>☐Other Parent-Child: |

| Employment | Other Civil | |
|---|---|---|
| ☐Discrimination<br>☐Retaliation<br>☐Termination<br>☐Workers' Compensation<br>☐Other Employment: | ☐Administrative Appeal<br>☐Antitrust/Unfair<br>Competition<br>☐Code Violations<br>☐Foreign Judgment<br>☐Intellectual Property | ☐Lawyer Discipline<br>☐Perpetuate Testimony<br>☐Securities/Stock<br>☐Tortious Interference<br>☐Other: |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐Tax Appraisal<br>☐Tax Delinquency<br>☐Other Tax | *Probate/Wills/Intestate Administration*<br>☐Dependent Administration<br>☐Independent Administration<br>☑Other Estate Proceedings | ☐Guardianship—Adult<br>☐Guardianship—Minor<br>☐Mental Health<br>☐Other: |

### 3. Indicate procedure or remedy, if applicable *(may select more than 1)*:

| | | |
|---|---|---|
| ☐Appeal from Municipal or Justice Court<br>☐Arbitration-related<br>☐Attachment<br>☐Bill of Review<br>☐Certiorari<br>☐Class Action | ☐Declaratory Judgment<br>☐Garnishment<br>☐Interpleader<br>☐License<br>☐Mandamus<br>☐Post-judgment | ☐Prejudgment Remedy<br>☐Protective Order<br>☐Receiver<br>☐Sequestration<br>☐Temporary Restraining Order/Injunction<br>☐Turnover |

### 4. Indicate damages sought (do not select if it is a family law case):

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100,000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☑ Over $1,000,000